IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **CARLOS PADILLA, III,**<br><br>                    **Plaintiff,**<br><br>v.<br><br>**ANTHONY D. WILLS,**<br><br>                    **Defendant.** | Case No. 24-cv-02478-SPM |

# MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

Plaintiff Carlos Padilla, an inmate of the Illinois Department of Corrections (IDOC), filed the instant lawsuit pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. The Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Any portion of the Complaint that is legally frivolous, malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. 28 U.S.C. § 1915A(b).

### THE COMPLAINT

In the Complaint, Plaintiff alleges that on February 29, 2024, while he was housed at Illinois River Correctional Center, he was placed in segregation and issued a non-violent disciplinary ticket. (Doc. 1, p. 4). After having a disciplinary hearing before the Adjustment Committee, Plaintiff was sanctioned with six months of segregation, three months C-grade status, a loss of six months of good time credits, and a disciplinary transfer. Plaintiff was transferred to Menard Correctional Center (Menard) on April 10, 2024. (*Id.*).

From April 10, 2024, until September 11, 2024, when Plaintiff was temporarily transferred to the Northern Reception and Classification Center on a court writ, Plaintiff was housed in Menard's North 2 solitary confinement segregation unit. (Doc. 1, p. 4). During this time, he was

deprived access to "exercise/yard recreation" and religious services. (*Id.* at p. 5). He was only afforded three separate hours of "group therapy-positive social interaction." (*Id.*).

On September 25, 2024, Plaintiff returned to Menard from the Northern Reception and Classification Center and again, was placed in the North 2. (Doc. 1, p. 4). On October 11, 2024, Plaintiff was released to general population and assigned to the "high aggression level" in East House on the "highest- aggression level gallery," 1- gallery. Plaintiff finally received yard time on October 28, 2024. (*Id.* at p. 4). Prior to October 28, Plaintiff did not receive "exercise/yard recreation" or religious services. (*Id.* at p. 5).

In segregation in North 2, Plaintiff was housed twenty-four hours a day in solitary confinement, under constant fluorescent illumination, and in a small cell. (Doc. 1, p. 6). Due to these conditions of confinement, he began to suffer from physical ailments, including extreme constipation, chronic joint and upper back pain, headaches, migraines, blurred vision, pain in his eyes, sharp chest pains, and nausea. Plaintiff also started "hearing things and seeing shadows." He developed and still has trouble sleeping and a loss of appetite. Plaintiff experienced nervousness, emotional distress, chronic agitation and irritation, depersonalization, hopelessness, and a lack of concentration and focus. He became emotionally volatile and would cry throughout the day at random times. (*Id.*).

Plaintiff asserts that all psychological and emotional suffering he experienced was because he was deprived of "yard recreation/outside exercise" during his time in segregation at Menard. (Doc. 1, p. 7). Contrary to his segregation conditions at Menard, Plaintiff points out that when he was in segregation at Illinois River Correctional Center, he received "all his out-of-cell time privileges." (*Id.* at p. 4). These privileges included daily yard time, weekly group therapy, weekly religious services, and three showers a week. (*Id.*).

**DISCUSSION**

Based on Plaintiff's allegations and his articulation of his claims, the Court designates the following count:

**Count 1:** Eighth Amendment claim against Warden Anthony Wills for subjecting Plaintiff to unconstitutional conditions of confinement from April 10, 2024, through September 11, 2024, and September 25, 2024, through October 28, 2024.

The parties and the Court will use this designation in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly*[1] pleading standard.**

Plaintiff claims that during his time in solitary segregation at Menard, from April 10-September 11, 2024, and then from September 25-October 11, 2024, he was housed in a small cell, under constant illumination and denied outside recreation time, attendance to religious services, and regular group therapy sessions. (Doc. 1, p. 7). Once released to general population, he was not allowed outside recreation time until October 28, 2024. He submitted grievances and sent "kites" to Warden Wills on June 9, June 10, June 20, June 25, July 21, August 4, and August 25, 2024, explaining that he was suffering because of his conditions of confinement. (*Id.* at p. 7-8). Warden Wills responded to Plaintiff's letters on August 20, 2024. (Doc. 1, p. 35). In his response, Wills observed that Plaintiff had submitted a grievance regarding the same issues and that the grievance was being processed through the grievance procedures. Wills instructed Plaintiff to write to his counselor regarding the status of his grievance. (*Id.*). By this time, Plaintiff had already been confined to his cell for almost five months with no action by staff.

---

[1] *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). This includes dismissal of any First Amendment claim Plaintiff is intending to bring regarding the denial of his ability to attend religious services while in segregation. Plaintiff has not provided sufficient information in the Complaint necessary to maintain a First Amendment claim against Warden Wills.

The Court finds that Plaintiff has stated a claim for unconstitutional conditions of confinement, and Count 1 shall proceed against Warden Wills. *See James v. Pfister,* 708 F. App'x 876, 879 (7th Cir. 2017) (citing *Turley,* 729 F. 3d 645, 652 (7th Cir. 2013); *Delaney v. DeTella,* 256 F. 3d 679, 683-85 (7th Cir. 2001); *Pearson v. Ramos,* 237 F. 3d 881, 884 (7th Cir. 2001); *Antonelli v. Sheahan,* 81 F. 3d 1422, 1432 (7th Cir. 1996)).

## OBJECTION AND MOTION TO RECONSIDER

On November 18, 2024, the Court denied Plaintiff's motion for a temporary restraining order and/or preliminary injunction, in which he requested the Court to enjoin Warden Wills from depriving him of outside exercise/yard recreation. (Doc. 3, 7). The Court found that Plaintiff had not demonstrated irreparable harm, as he was no longer in segregation and was not currently being denied access to exercise or recreation. Plaintiff had not established that he was likely to again be denied constitutionally adequate "out-of-cell" time during the pendency of this litigation, and "[i]ssuing a preliminary injunction based only on the possibility of irreparable harm is inconsistent with…injunctive relief as an extraordinary remedy." (Doc. 7) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)).

Plaintiff has now filed a motion asking the Court to reconsider its denial order, title "Objection and Motion to Reconsider." (Doc. 9). Plaintiff argues that the Court wrongly ruled that "he has not demonstrated that without court action he is likely to again be denied constitutionally adequate out-of-cell time during the pendency of this litigation." (*See* Doc. 7). He contends that this is the wrong conclusion and that as pro se pleadings are to be liberally construed, he was not required to demonstrate that he would be again denied constitutionally adequate out-of-cell time. Plaintiff believes that his motion for a temporary restraining order and/or preliminary injunction when taken in combination with his Complaint, which meets the pleading standards, should be granted. Plaintiff goes on to state that though he is no longer in segregation, he is still in a restrictive

environment while housed in East Cell House, which he describes as de facto segregation. In East Cell House, when staffing allows, he is afforded a three to four hour outside recreation period on Mondays, a ten-minute shower on Sundays, and an hour in the law library on Tuesdays. He states that he is unable to exercise in his cell because he only has 35 square feet of unencumbered space when his cellmate remains on the bunkbed. Plaintiff describes his cellmate as "highly aggressive" and contends that without the "full cooperation" of his cellmate, he is unable to exercise. Plaintiff argues that the current out-of-cell time he is given is unconstitutional and hindering his mental and physical health.

Under Rule 54(b), the Court may revise any order adjudicating fewer than all the claims at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties. Motions to reconsider an order under Rule 54(b) are judged largely by the same standards as motions to alter or amend a judgment under Rule 59(e), "to correct manifest errors of law or fact or to present newly discovered evidence." *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir. 1987) (citation omitted). "Reconsideration is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion." *Caisse Nationale de Credit Agricole v. CBI Indus., In*c., 90 F.3d 1264, 1270 (7th Cir. 1996). *See also Ahmed v. Ashcrof*t, 388 F. 3d 247, 249 (7th Cir. 2004).

Here, Plaintiff has not established that the Court made an error of law or fact in denying his initial motion for a temporary restraining order (TRO) and/or preliminary injunction, and the motion is denied. Plaintiff is incorrect that because he has sufficiently stated a claim for relief, he has met the standard required for a TRO or preliminary injunction. In denying the motion, because Plaintiff had not shown irreparable harm, the Court did not address whether Plaintiff had demonstrated that his underlying case has some likelihood of success on the merits. The standard for determining whether Plaintiff is likely to succeed on the merits of his claim, however, is not

the same as the pleading standards. When assessing Plaintiff's allegations, the Court does not simply "accept [the plaintiff's] allegations as true, nor do[es] [it] give him the benefit of all reasonable inferences in his favor, as would be the case in evaluating a motion to dismiss on the pleadings." *Doe v. Univ. of S. Indiana*, 43 F.4th 784, 791 (7th Cir. 2022). Instead, the Court must make an assessment of the merits as "they are likely to be decided after more complete discovery and litigation." *Id.*

Based on the original motion for a TRO and/or preliminary injunction, Plaintiff only showed a "possibility" of irreparable harm without Court interference, which is not sufficient. *Winter,* 555 U.S. at 22. In the original motion, Plaintiff states that he is no longer in segregation and does not discuss his current conditions of confinement. He only refers to his past denial of outside exercise for five months from April 10 through September 11, 2024, and then for 30 days from September 25 through October 28, 2024.

To the extent Plaintiff is asking the Court to reconsider the denial of his request for emergency injunctive relief based on newly discovered evidence, the motion is also denied. Again, Plaintiff has not sufficiently demonstrated irreparable harm if the Court does not issue an injunction. Plaintiff is being released from his cell weekly and appears to be receiving mental health and medical treatment. In the original motion for a TRO and/or preliminary injunction, Plaintiff states that as of November 13, 2024, he had been seen by a nurse for his physical ailments and given Ibuprofen and Tylenol for his pain and Colace and milk of magnesia for his extreme constipation. (Doc. 3). He had been placed on the schedule to be seen by a nurse practitioner. (*Id.*). In the motion to reconsider, filed on November 26, 2024, he appears to have been seen by a mental health professional for his mental health conditions and received a clinical diagnosis. (Doc. 9, p. 3). Plaintiff asserts that the amount of time in his cell constitutes deliberate indifference to his future health, but he does not discuss the details of his healthcare or lack thereof. Plaintiff only

makes the general statement that without additional outside recreation time his "mental and physical health will continue to d[i]gress." (*Id.* at p. 4, 5). This is not sufficient for the Court to issue the type of mandatory injunction requested, which is "cautiously viewed and sparingly issued." *Graham v. Med. Mut. Of Ohio,* 130 F. 3d 293, 295 (7th Cir. 1997). Accordingly, the Objection and Motion to Reconsider is **DENIED.**

### SECOND MOTION FOR A TRO AND PRELIMINARY INJUNCTION

On January 21, 2025, Plaintiff filed a document titled "Declaration in Support of Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction." (Doc. 12). Since the Court has already denied the original motion for a TRO and/or preliminary injunction, the Court will treat this filing as a second motion for a TRO and preliminary injunction.

In the motion, Plaintiff asserts that in the last thirty days he has had only about twenty minutes of out-of-cell time and has only been allowed to shower once. His last outside recreation time was in early December when he received one four-hour yard period. Plaintiff was supposed to have a video visit scheduled for January 2, 2025, but the visit was canceled. He asserts he has been confined to his cell for twenty-four hours a day under constant illumination. Plaintiff states that his mental health continues to digress, and he has become extremely depressed. He suffers from mood swings, extreme hopelessness, sadness, irritation, and unprovoked anger. Plaintiff has been prescribed pain medication, but he still has chronic and severe back pain. He asserts he has not been able to receive an examination from any medical or mental health professional. Plaintiff reasserts that East Cell House is de facto segregation. He asks the Court to issue an order requiring Defendant Wills to provide him with structured and unstructured out-of-cell time.

The Court may issue a TRO without notice to the party to be enjoined, if a plaintiff sets forth "specific facts in an affidavit or a verified complaint clearly show[ing] that immediate or irreparable injury, loss, or damage will result to the movant before the adverse party can be heard

in opposition." FED. R. CIV. P. 65(b)(1)(A). A TRO may last no more than 14 days. FED. R. CIV. P. 65(b)(2). Additionally, the Prison Litigation Reform Act (PLRA) requires that any grant of prospective relief, including TROs, "shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs" and cannot issue "unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626. Federal courts must exercise equitable restraint when asked to take over the administration of a prison, something that is best left to correctional officials and their staff. *See Sandin v. Conner*, 515 U.S. 472, 482 (1995); *Rizzo v. Goode*, 423 U.S. 362, 379 (1976). It is not clear why Plaintiff has remained in his cell without the opportunity to shower or go to yard for over thirty days or when his next out-of-cell time is scheduled, and so the Court cannot possibly meet the requirements of the PLRA by issuing a TO that "extends not further than necessary to correct" the alleged violation. A response from Defendant Wills is necessary. The request for a TRO, therefore, is **DENIED**.

A preliminary injunction is issued only after the adverse party is given notice and an opportunity to oppose the motion. *See* FED. R. CIV. P. 65(a)(1). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20 (citations omitted); *Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013). Before the Court can render a decision on Plaintiff's request for relief, Defendant Wills must file a response to the pending motion. **Defendant Warden Wills shall respond to the pending motion seeking a preliminary injunction within 14 days of accepting service of this lawsuit.** (Doc. 12). The response should contain information regarding Plaintiff's ongoing confinement to his cell and medical care. The Court will then review

the response and determine whether a hearing on this motion is necessary before issuing a decision.

## DISPOSITION

For the reasons stated above, the Complaint survives preliminary review pursuant to Section 1915A. **COUNT 1** shall proceed against Warden Wills. The Objection and Motion to Reconsider is **DENIED**. (Doc. 9). The Motion for Status is **DENIED** as moot in light of this Order. (Doc. 11). Defendant Warden Wills shall respond to the pending motion seeking a preliminary injunction within 14 days of accepting service of this lawsuit. (*See* Doc. 12). The response should contain information regarding Plaintiff's ongoing confinement to his cell and medical treatment.

The Clerk of Court is further **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

The Clerk of Court **SHALL** prepare for Wills the following: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, request for a preliminary injunction at Doc. 12, and this Memorandum and Order to Defendant's place of employment. If the defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the defendant, and the Court will require the defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If the defendant can no longer be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, his last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the

Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendant needs only to respond to the issues stated in this Merit Review Order.**

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: January 28, 2025**

*s/Stephen P. McGlynn*
**STEPHEN P. MCGLYNN**
**United States District Judge**

NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days** or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.